CONSUMERS POWER COMPANY v PUBLIC SERVICE
COMMISSION NO 1

Docket Nos. 136361, 139592, 139593. Submitted August 12, 1992, at
Lansing. Decided October 20, 1992, at 9:10 A.M. Leave to appeal
sought.

On September 29, 1989, Consumers Power Company filed an
application with the Public Service Commission seeking ap-
proval of its proposed power supply cost recovery (PSCR) plan,
factors, and forecast, covering the plan year 1990 and the five-
year forecast for 1990-94. (PSC Case No. U-9432.) The Attorney
General was allowed to intervene and filed a motion for partial
summary disposition and for approval of temporary factors.
The PSC staff joined the motion. On December 21, 1989, the PSC
granted the motion and issued a temporary order finding that
the appropriate PSCR factor was negative .304 cents per kilo-
watt-hour. The PSC further held that upon the commercial
operation date of any qualifying cogeneration and small power
production facilities (QFS), including the Midland Cogeneration
Venture Limited Partnership (MCV), Consumers could imple-
ment a PSCR factor consistent with the PSC's findings in PSC
Case No. U-8871. (See *Consumers Power Co v Public Service
Comm,* 189 Mich App 151 [1991], for a discussion of Case No.
U-8871.) Consumers appealed the December 21, 1989, tempo-
rary order in Case No. U-9432, contending that the PSC improp-
erly issued the order without holding evidentiary hearings. The
Court of Appeals, SHEPHERD, P.J., and WAHLS and R. B. BURNS,
JJ., affirmed, holding that the PSC did not err in relying upon
evidentiary hearings in Case No. U-8871 to fulfill the require-
ment that parties be given a reasonable opportunity for a full
and complete hearing in connection with any temporary orders.
192 Mich App 180 (1991).

On December 21, 1989, the PSC also issued pertinent orders
regarding capacity charge payments by Consumers to the MCV
in Case No. U-8871. Several parties then moved to strike all of
Consumers' testimony and exhibits in Case No. U-9432 regard-
ing its planned purchases of capacity from the MCV, arguing

REFERENCES

Am Jur 2d, Public Utilities §§ 240 *et seq.,* 264 *et seq..*
See the ALR Index under Utilities.

that the findings in Case No. U-8871 were controlling. The hearing referee granted the motions. Consumers then filed testimony to support a PSCR factor of 2.26 cents per kilowatt-hour, the average backloaded capacity charge approved by the PSC in Case No. U-8871. The PSC staff argued that the projected PSCR factor for 1990 should be reduced even further, inasmuch as Consumers never submitted a revised contract with the MCV for PSC approval as required by one or more orders in Case No. U-8871. The staff argued that capacity charges paid by Consumers to the MCV should not be paid on the basis of availability, but rather on the basis of energy actually delivered. The hearing referee agreed and reduced further the projected power supply costs for purchases of energy and capacity from the MCV. The PSC, by order dated January 29, 1991, upheld the decision of the hearing referee. Consumers' petition for rehearing and reconsideration was thereafter denied. Consumers appealed, and the MCV and the Attorney General cross appealed as of right from those orders. (Docket No. 139592.)

Consumers filed an application with the Public Service Commission with regard to its PSCR plan and forecast for the plan year 1991 and the five-year forecast for 1991-95 (PSC Case No. U-9732). Consumers proposed a uniform PSCR factor for 1991 of .622 cents per kilowatt-hour, once again including its power supply agreement with the MCV. Consumers also was willing to implement a PSCR factor of no more than .232 cents per kilowatt-hour to reflect holdings in Case No. U-8871. The PSC staff filed a motion for a temporary order, arguing that Consumers should not be allowed to self-implement factors any higher than those approved in Case No. U-8871. The PSC granted the staff's motion and issued a temporary order approving a PSCR factor of no more than .232 cents per kilowatt-hour. Consumers appealed as of right from that order. (Docket No. 136361.) The PSC staff then filed a second motion for a temporary order to lower the PSCR factor for 1991 from .232 cents per kilowatt-hour to .08 cents per kilowatt-hour, on the basis of the PSC's January 29, 1991, order in Case No. U-9432. The PSC agreed with the staff, and on March 28, 1991, entered a second temporary order in Case No. U-9732, lowering the PSCR factor to .08 cents per kilowatt-hour effective April 1991. Consumers appealed, and the MCV cross appealed as of right from that order (Docket No. 139593.) The appeals in Docket Nos. 136361 and 139593 were consolidated by the Court of Appeals.

The Court of Appeals *held:*

1. The PSC was not required to accept and review Consumers' proffered evidence in Case No. U-9432 regarding the reason-

ableness and prudence of the capacity charges in the contract between Consumers and the MCV. The PSC properly relied upon evidentiary hearings in Case No. U-8871, where those issues already had been litigated, to fulfill the requirement of MCL 460.6j; MSA 22.13(6j) that Consumers be provided an opportunity for a full and complete hearing. Consumers could establish by new evidence or by evidence of a change in circumstances that the findings in Case No. U-8871 should no longer be applicable. However, Consumers did not attempt to present such evidence.

2. There is nothing unreasonable or arbitrary in the PSC's insistence that special terms and conditions regarding the purchase of capacity, such as a tie-in between dispatchability and payments based on availability, be contained in long-term contracts that meet with PSC approval. The existence of contractual obligations provides stability to the relationship between a QF and a utility, which may justify the payment of capacity charges based on availability. Because Consumers' contract with the MCV contains a number of terms that the PSC found unreasonable, imprudent, or otherwise improper, it did not act arbitrarily, capriciously, or punitively in refusing to allow Consumers' 1990 and 1991 PSCR factors to include capacity charges based on availability.

3. In light of the ambiguity regarding whether 18 CFR 292.303a and 18 CFR 292.304(d)(1) and (2) require that QF's receive payments based on avoided capacity made available, and not based on energy actually generated and delivered, the PSC properly has approved only capacity charges based on avoided costs paid for energy actually delivered and not based on availability.

4. To the extent that a utility buys energy or capacity within parameters approved by the PSC, even though not pursuant to an approved contract, the PSC is empowered to allow those costs to be passed through to ratepayers and is not required to disallow them simply because they are not in a contract, as long as the utility has obtained prior approval of the cost from the PSC. The hearing referee properly adopted 2.26 cents per kilowatt-hour as the reasonable average capacity charge for purchases from the MCV in 1990 on the basis of the pricing structure approved in Case No. U-8871.

Affirmed.

1. PUBLIC UTILITIES — POWER SUPPLY COST RECOVERY PLANS — PUBLIC SERVICE COMMISSION — TEMPORARY APPROVAL — HEARINGS.

The requirement that the Public Service Commission must afford

a reasonable opportunity for a full and complete hearing before issuing a temporary order approving or partially approving a public utility's power supply cost recovery plan may be satisfied by the commission's reliance on the record of a prior hearing where the same utility and the same cost recovery factors are involved (MCL 460.6j[8]; MSA 22.13[6j][8]).

2. PUBLIC UTILITIES — RATE CHARGES — ABSENCE OF CONTRACT — PUBLIC SERVICE COMMISSION.

To the extent that a public utility buys energy or capacity within parameters approved by the Public Service Commission, even though not pursuant to an approved contract, the commission is empowered to allow those costs to be passed through to ratepayers; the commission is not required to disallow the costs simply because they are not in a contract, as long as the utility has obtained prior approval of the cost from the commission.

*Loomis, Ewert, Ederer, Parsley, Davis & Gotting, P.C.* (by *William D. Parsley, Harvey J. Messing,* and *Richard J. Aaron*), and *David A. Mikelonis, Jon R. Robinson, Frank R. Knox,* and *Denise M. Sturdy,* for Consumers Power Company.

*Don L. Keskey,* Assistant Attorney General, for the Public Service Commission.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Luis F. Fernandez* and *Robert L. Mol,* Assistant Attorneys General, for the Attorney General.

*Campbell, Shaltz & Royal, P.C.* (by *Diane R. Royal*), for the Residential Ratepayer Consortium.

*Foster, Swift, Collins & Smith, P.C.* (by *Stephen O. Schultz, William K. Fahey,* and *Glen A. Schmiege*), for the Midland Cogeneration Venture Limited Partnership.

Before: WAHLS, P.J., and SULLIVAN and MURPHY, JJ.

Per Curiam. Consumers Power Company appeals as of right, and the Midland Cogeneration Venture Limited Partnership (MCV) and the Attorney General cross appeal as of right, a number of orders of the Public Service Commission regarding Consumers' 1990 and 1991 power supply cost recovery (PSCR) plans and factors.

On September 10, 1987, the MCV filed with the PSC an application for approval of capacity charges in a contract for the sale of electricity to Consumers. The application stated that the MCV intended to construct and operate a gas-fired cogeneration plant in Midland, Michigan, to supply steam and electricity to Dow Chemical Company and to sell electricity to Consumers. It was docketed as Case No. U-8871. The PSC consolidated the MCV's application with other applications and complaints, invited additional submissions, and used the consolidated case to implement the federal Public Utility Regulatory Policies Act of 1978 (PURPA), PL 95-617, 92 Stat 3117. Section 210 of the PURPA, 16 USC 824a-3, encourages the development of alternative power sources in the form of cogeneration and small power production facilities. The PURPA defines a "cogeneration facility" as one that produces both electric energy and some other form of useful energy, such as steam or heat. Pursuant to the PURPA, the Federal Energy Regulatory Commission (FERC) promulgated rules to encourage development of alternative sources of power, including rules requiring utilities to offer to buy electricity from, and to sell electricity to, qualifying cogeneration and small power production facilities (QFs).

The contested case hearings regarding the consolidated applications of the MCV and other QFs were lengthy. Sixty parties and more than one hundred witnesses participated in the hearings.

The PSC issued a series of orders in that case from January 31, 1989, until January 22, 1990. Those orders were the subject of a previous appeal as of right by Consumers, the MCV, the Attorney General, and other parties. In an opinion released on May 7, 1991, this Court held that the PSC had properly exercised its authority in determining the avoided capacity cost that could be passed on to customers through the power supply cost reconciliation process required by 1982 PA 304 (Act 304), MCL 460.6j(12); MSA 22.13(6j)(12). This Court also held that the PSC acted properly in determining future capacity needs, in determining the costs that would be avoided by using a hypothetical coal-fired facility, and in adopting a rate structure that would reflect the avoided costs over the term of the contract. However, the Court held that the PSC exceeded its authority in limiting the percentage of avoided capacity that could be supplied by a single QF and in limiting the percentage that could be produced from a single fuel source. It was found that Consumers properly could have contracted with the MCV to have its entire projected capacity supplied from the MCV facility, and the PSC should have approved that contract if the negotiated price was no more than the projected avoided capacity costs on the day the contract was signed. Because of certain unresolved factual issues, this Court remanded to the PSC for further proceedings. *Consumers Power Co v Public Service Comm,* 189 Mich App 151; 472 NW2d 77 (1991).

Meanwhile, on September 29, 1989, Consumers filed an application for approval of its 1990 PSCR plan, factors, and forecast, covering the plan year 1990 and the five-year forecast for 1990-94, as required by §§ 6j(3) and (4) of Act 304. It was docketed as PSC Case No. U-9432. Consumers sought approval of a .652 cents/kwh (kilowatt

hour) PSCR factor for each month in 1990 reflecting purchases of generating capacity from QFS, including the MCV at a rate of 4.15 cents/kwh paid on the basis of availability. The Attorney General was allowed to intervene and filed a motion for partial summary disposition and for approval of temporary factors, requesting the PSC to issue a temporary order authorizing a maximum PSCR factor of negative .304 cents/kwh. The PSC staff joined in the Attorney General's motion. On December 21, 1989, the PSC granted the motion and issued a temporary order finding that the appropriate temporary PSCR factor for Consumers to use in billing its customers was negative .304 cents/kwh. The PSC further held that upon the commercial operation date of any QF, including the MCV, Consumers could implement a PSCR factor consistent with the PSC's findings in Case No. U-8871.

Consumers appealed as of right the PSC's December 21, 1989, temporary order, contending only that the PSC improperly issued a temporary order without holding evidentiary hearings. This Court disagreed, holding that the PSC did not err in relying upon evidentiary hearings in Case No. U-8871 to fulfil the requirement that parties be given a reasonable opportunity for a full and complete hearing in connection with any temporary orders. *Consumers Power Co v Public Service Comm,* 192 Mich App 180, 186; 481 NW2d 1 (1991).

On the same day that the PSC issued the temporary order in Case No. U-9432, December 21, 1989, it issued an order in Case No. U-8871 holding that for purposes of § 6j(13)(b) of Act 304, the PSC would approve average capacity charge payments by Consumers to the MCV at the rate of 3.77 cents/kwh, and not the 4.15 cents/kwh agreed to by Consumers and the MCV in their contract. In addition, the PSC held that this capacity charge would be "back-

loaded" for a period of 17.5 years, so that capacity charge payments in the first year would equal only 2.26 cents/kwh.[1]

Several parties moved to strike virtually all of Consumers' testimony and exhibits in Case No. U-9432 regarding its planned purchases of capacity from the MCV, arguing that the findings in Case No. U-8871 were controlling. The hearing referee granted these motions. Consumers then filed testimony to support a PSCR factor of 2.26 cents/kwh, i.e., the average backloaded capacity charge approved by the PSC in Case No. U-8871. This resulted in a reduction of the projected power supply costs for purchases of energy and capacity from the MCV in Consumers' 1990 PSCR plan from $371,-832,920 to $230,798,345. However, the PSC staff argued that the projected PSCR factor for 1990 should be reduced even further, inasmuch as Consumers never submitted a revised contract with the MCV for PSC approval, as required by one or more orders in Case No. U-8871. The staff argued that capacity charges paid by Consumers to the MCV should not be paid on the basis of availability, but rather on the basis of energy actually delivered. The hearing referee agreed and reduced the projected power supply costs for purchases of energy and capacity from the MCV by an additional $36,038,318.

The hearing referee issued his proposal for decision on October 27, 1990. Various parties filed exceptions. By order dated January 29, 1991, the PSC upheld the hearing referee's proposal in all relevant respects. Consumers' petition for rehearing and reconsideration was denied by order dated March 28, 1991. It is from these orders that Consumers appeals as of right and the MCV and the

[1] For an explanation of backloading, see *Consumers Power, supra,* 189 Mich App 151, 166, 190-194.

Attorney General cross appeal as of right in Docket No. 139592.

The other appeals in this action involve issues arising out of Consumers' PSCR plan and forecast for the plan year 1991 and the five-year forecast for 1991-95, docketed by the PSC as Case No. U-9732. For 1991, Consumers proposed a uniform PSCR factor of .622 cents/kwh, once again including its power supply agreement with the MCV. However, recognizing that the appropriate rate for capacity purchases from the MCV was at issue in the appeals from the PSC orders in Case No. U-8871, Consumers represented a willingness to implement a PSCR factor of no more than .232 cents/kwh to reflect holdings in Case No. U-8871 with which Consumers disagreed.

The PSC staff filed a motion for a temporary order, arguing that Consumers should not be allowed to self-implement factors any higher than those approved in Case No. U-8871. Consumers opposed the motion, asserting that a temporary order was unnecessary given its willingness to accept a lower PSCR factor pending the resolution of the appeals in Case No. U-8871. Consumers also argued that a temporary order was not appropriate unless it was given a reasonable opportunity for a full and complete evidentiary hearing.

On December 20, 1990, the PSC granted the staff's motion and issued a temporary order approving a PSCR factor of no more than .232 cents/kwh. It is from this order that Consumers appeals as of right in Docket No. 136361.

The PSC staff filed a second motion for a temporary order to lower the PSCR factor for 1991 from .232 cents/kwh to .08 cents/kwh, on the basis of the PSC's January 29, 1991, order in Case No. U-9432 (discussed above). The PSC once again agreed with the staff and on March 28, 1991, entered a

second temporary order in Case No. U-9732, lowering the PSCR factor to .08 cents/kwh effective April 1991. It is from this order that Consumers appeals as of right and the MCV cross appeals as of right in Docket No. 139593. The appeals in Docket Nos. 136361 and 139593 were consolidated by the Court of Appeals.

I

Sections 6j(3) and (4) of Act 304 require a utility to file annually a PSCR plan and forecast. Section 6j(5) requires the PSC to conduct a power supply and cost review for the purpose of evaluating the reasonableness and prudence of a PSCR plan filed by a utility. Section 6j(6) requires the PSC to evaluate the utility's filed plan and to approve, disapprove, or amend the plan.

Consumers maintains that the PSC was required to accept and review Consumers' proffered evidence in Case No. U-9432 regarding the reasonableness and prudence of the capacity charges in the contract between Consumers and the MCV, and that it was improper for the PSC to exclude completely such evidence and to rely instead on the proceedings in Case No. U-8871.

In addition, Consumers notes that § 6j of Act 304 provides, in part:

(8) The commission, on its own motion or the motion of any party, may make a finding and enter a temporary order granting approval or partial approval of a power supply cost recovery plan in a power supply and cost recovery review, after first having given notice to the parties to the review, and after having afforded to the parties to the review a reasonable opportunity for a full and complete hearing. A temporary order made pursuant to this subsection shall be considered a final order for purposes of judicial review.

(9) If the commission has made a final or temporary order in a power supply and cost review, the utility may each month incorporate in its rates for the period covered by the order any amounts up to the power supply cost recovery factors permitted in that order. If the commission has not made a final or temporary order within 3 months of the submission of a complete power supply cost recovery plan, or by the beginning of the period covered in the plan, whichever comes later, or if a temporary order has expired without being extended or replaced, then pending an order which determines the power supply cost recovery factors, a utility may each month adjust its rates to incorporate all or a part of the power supply cost recovery factors requested in its plan. Any amounts collected under the power supply cost recovery factors before the commission makes its final order shall be subject to prompt refund with interest to the extent that the total amounts collected exceed the total amounts determined in the commission's final order to be reasonable and prudent for the same period of time.

Consumers contends that the PSC's temporary orders in Case No. U-9732 were not valid, because the PSC failed to give Consumers a reasonable opportunity for a full and complete hearing, as required by subsection 6j(8). Because the PSC did not issue a valid final or temporary order within three months of the submission of its PSCR plan, Consumers argues that it is entitled to adjust its monthly rates in accordance with the factors requested in the submitted plan.

This Court recently held that the PSC properly relied upon evidentiary hearings in Case No. U-8871 to fulfill the requirement that parties be given a reasonable opportunity for a full and complete hearing before the issuance of a temporary order in connection with PSCR factors. *Consumers Power, supra,* 192 Mich App 186. In doing

so, this Court quoted with approval the opinion in *Pennwalt Corp v Public Service Comm*, 166 Mich App 1, 9; 420 NW2d 156 (1988), which, in the context of a rate-making case, held:

> Since ratemaking is a legislative, rather than a judicial [,] function, the administrative determination made by the commission in setting rates is not "adjudicatory in nature," as required by [*Senior Accountants, Analysts & Appraisers Ass'n v Detroit*, 399 Mich 449; 249 NW2d 121 (1976)]. Thus, res judicata and collateral estoppel cannot apply in the pure sense. However, this does not mean that the question of the reasonableness of the costs of the wastewater treatment facility had to be completely relitigated in Case No. U-6949. The precise question was litigated in Case No. U-6488, where the commission found the costs to be reasonable. To have the same proofs, exhibits, and testimony repeated would be a waste of the commission's resources. Rather, we feel that placing the burden on plaintiff to establish by new evidence or by evidence of a change in circumstances that the costs were unreasonable adequately balances the competing considerations of administrative economy and allowing plaintiff the chance to challenge the rate increase. [192 Mich App 184-185.]

We agree with these holdings. Consumers essentially wishes to relitigate certain issues already litigated in Case No. U-8871, which was an extraordinarily long and involved case that generated a transcript in excess of 14,000 pages and over 400 exhibits. It would clearly be a waste of resources to allow Consumers to force the relitigation of issues already settled. Instead, as in *Pennwalt*, Consumers should be allowed to establish by new evidence or by evidence of a change in circumstances that the findings in Case No. U-8871

should no longer be applicable. Consumers has not attempted to do so in this case.

II

The contract between Consumers and the MCV calls for Consumers to pay capacity charges based on the amount of capacity made available to Consumers, instead of basing payments on the amount of energy actually generated and delivered. In exchange for basing payments on available capacity, the MCV agrees to make its facility "dispatchable," i.e., Consumers is allowed to put the MCV facility on-line and take it off-line as it sees fit. In this way, Consumers can utilize the capacity of the MCV facility when economical, and can shut it down when the capacity is unneeded or when cheaper energy can be purchased from other sources.

The PSC held that Consumers' 1990 and 1991 PSCR factors could not be calculated on the basis of capacity made available by the MCV, but must instead be based on the amount of energy actually generated and delivered by the MCV. Consumers argues that this is an arbitrary and capricious action by the PSC. Consumers argues that, if the PSC can require Consumers to bring its capacity-charge rate into conformity with Case No. U-8871, consistency requires that the PSC approve capacity charges based on availability, because charges based on availability were approved in Case No. U-8871.

The record indicates that the PSC agrees that capacity charges may be tied to the availability of capacity, as an incentive to QFS to make their facilities dispatchable and thus increase the efficiency of the utility and lower the costs passed on to ratepayers. However, there is also record testi-

mony to the effect that capacity charges have always in the past been based on energy actually generated and delivered, and not on availability. We find nothing unreasonable or arbitrary in the PSC's insistence that special terms and conditions regarding the purchase of capacity, such as a tie-in between dispatchability and payments based on availability, be contained in long-term contracts that meet with PSC approval. The existence of contractual obligations provides stability to the relationship between a QF and a utility, which stability may justify the payment of capacity charges based on availability.

Because Consumers' contract with the MCV contains a number of terms that the PSC found unreasonable, imprudent, or otherwise improper, the PSC did not act arbitrarily, capriciously, or punitively in refusing to allow Consumers' 1990 and 1991 PSCR factors to include capacity charges based on availability.[2]

### III

18 CFR 292.303 provides, in part:

> (a) *Obligation to purchase from qualifying facilities.* Each electric utility shall purchase, in accordance with § 292.304, any energy and capacity which is made available from a qualifying facility.

18 CFR 292.304 provides, in part:

> (d) *Purchases "as available" or pursuant to a*

---

[2] We note that many of the PSC's objections to the contract were found improper in *Consumers Power Co v Public Service Comm,* 189 Mich App 151 (1991). Nevertheless, the PSC did not act arbitrarily when it refused to approve capacity charges based on availability when those terms were not incorporated in an approved contract, even though the PSC's reasons for failing to approve the contract were later found wanting.

*legally enforceable obligation.* Each qualifying facility shall have the option either:

(1) To provide energy as the qualifying facility determines such energy to be available for such purchases, in which case the rates for such purchases shall be based on the purchasing utility's avoided costs calculated at the time of delivery; or

(2) To provide energy or capacity pursuant to a legally enforceable obligation for the delivery of energy or capacity over a specified term, in which case the rates for such purchases shall, at the option of the qualifying facility exercised prior to the beginning of the specified term, be based on either:

(i) The avoided costs calculated at the time of delivery; or

(ii) The avoided costs calculated at the time the obligation is incurred.

Consumers and the MCV argue that these regulations require that QFS receive payments based on avoided capacity made available, and not based on energy actually generated and delivered. We disagree. 18 CFR 292.303(a) is ambiguous. It is unclear whether "available" as used in the regulation means capacity that the QF is ready and willing to provide, or whether "available" means capacity actually delivered to the utility. Indeed, it appears that the latter meaning is intended in 18 CFR 292.304(d), which distinguishes between energy "available" for purchase, the cost of which is calculated at the time of delivery, and energy or capacity provided pursuant to contract. In light of this ambiguity, we defer to the expertise of the PSC, which to date has only approved capacity charges based on avoided costs paid for energy actually delivered and not based on availability.

We find it somewhat incongruous for Consumers and the MCV to argue that 18 CFR 292.304(d) supports their position, inasmuch as the MCV has

contracted to supply energy and capacity to Consumers, and the regulation distinguishes between energy or capacity provided pursuant to contract and energy supplied as available. In any event, we believe that the regulation viewed as a whole is concerned with when avoided charges are calculated, either at the time of delivery or at the time the obligation is incurred, and not how or on what basis avoided costs should be calculated.

### IV

Consumers and the MCV contend that the true avoided capacity cost that should be passed through to ratepayers is the 4.15 cents/kwh contained in their contract. Recognizing that in Case No. U-8871 the PSC found that the actual avoided capacity cost was 3.77 cents/kwh, they argue that this figure should be incorporated on a temporary basis in the PSCR factor, and that the PSC erred in holding that Consumers could only pass through an average capacity charge of 2.26 cents/kwh. Consumers and the MCV note that this lower figure is the result of the backloading ordered by the PSC in Case No. U-8871, from which the parties appealed. In the alternative, they argue that because the PSC ordered backloading over a 17.5-year period, the 1990 PSCR factor should not reflect a backloaded capacity charge unless the PSC commits itself in advance to ramping up the average capacity charge in future years, so that Consumers and the MCV can be confident that the true average avoided capacity cost of 3.77 cents/kwh will be reimbursed.

The Attorney General agrees that the PSC erred, but for a different reason. The Attorney General notes that § 6j(13)(b) requires the PSC, in a power supply cost reconciliation proceeding, to disallow

any capacity charges associated with power pur-
chased for periods in excess of six months unless
the utility has obtained prior approval of the PSC.
The Attorney General argues that Consumers has
not obtained approval for capacity charges associ-
ated with power purchases from the MCV, and that
its 1990 PSCR plan and factors contemplate pur-
chasing such power for periods in excess of six
months. The Attorney General concludes that the
PSC erred in allowing Consumers to pass through
to ratepayers any of the costs associated with
purchasing capacity from the MCV.

In its January 29, 1991, order the PSC rejected
both of these positions for the following reasons:

> In our July 18, 1990 order in this case, we held
> that the failure of Consumers and the MCV to
> amend their contract to incorporate terms that are
> consistent with the Commission's orders in Case
> No. U-8871 denies them the protection of the
> remaining portion of MCL 460.6j(13)(b). [MSA
> 22.13(6j)(13)(b)]. However, we also held that the
> failure of Consumers and the MCV to conform their
> contract to the orders in Case No. U-8871 does not
> require a disallowance pursuant to MCL 460.6j(13)
> (b) [MSA 22.13(6j)(13)(b)] of the capacity amounts
> and rates that are consistent with Case No. U-8871
> because the first sentence of that section does not
> require that the capacity charges be in a contract.

> Based on our prior orders, as well as Act 81
> [1987 PA 81], the Commission is not required to
> permit Consumers to recover from ratepayers any
> of the capacity charges paid to the MCV pursuant
> to the terms of the unapproved contract. On the
> other hand, we do not agree with the Attorney
> General that the maximum capacity rate the com-
> pany should be permitted to recover is zero. We
> recognize that Consumers had a need to purchase
> some power during 1990, for which it should be
> permitted to recover on some basis. Rather than
> estimating costs for a one-year purchase based on

market conditions, it is appropriate to allow Consumers to recover, on a short-term basis, capacity charges paid to the MCV based on the quantity and pricing structure approved in Case No. U-8871 for a gas-fired facility in the first year of a 35-year contract, even though the avoided capacity cost for a one-year purchase might be significantly lower. Those determinations were the subject of exhaustive notice, hearings, briefings, and several Commission orders. Therefore, consistent with those determinations, we find that the [hearing referee] properly adopted 2.26 cents/kwh as the reasonable average capacity charge for purchases from the MCV in 1990.

The PSC has interpreted § 6j(13)(b) as not requiring the PSC to disallow capacity charges associated with power purchased for periods in excess of six months even if the power purchase was pursuant to a contract that has not received approval, as long as the PSC has approved the actual purchase. Therefore, even though the capacity Consumers intends to purchase from the MCV in 1990 was pursuant to an unapproved contract, the PSC held that it was empowered to allow Consumers to pass on reasonable charges approved by the PSC, i.e., those charges found reasonable in Case No. U-8871. However, because Consumers has not submitted a contract for approval, Consumers is not entitled to the protections of § 6j(13)(b), and, therefore, the PSC is not required to commit itself to future ramping up of the backloaded charges.

Great deference is due the construction of a statute by the agency legislatively chosen to enforce it, which ought not to be overruled without cogent reasons. *Breuhan v Plymouth-Canton Community Schools,* 425 Mich 278, 282-283; 389 NW2d 85 (1986). We find the PSC's interpretation of § 6j(13)(b) reasonable, and know of no cogent reasons to overrule it. A contract between a utility

and a QF provides legally enforceable obligations in connection with the supply of electric power and capacity. In exchange for this stability, the utility and the QF can be assured that capacity charges in such a contract, once approved by the PSC, may not be reconsidered for 17.5 years. If, however, the parties do not enter into a contract, or the PSC finds reason for not approving the contract, then the lack of stability in the relationship removes the justification for extending the 17.5-year protection to the approved charge rate. This does not mean, however, that the capacity charges projected to be or actually incurred by a utility are not reasonable and prudent. To the extent that the utility buys energy or capacity within parameters approved by the PSC, albeit not in an approved contract, the PSC is empowered to allow those costs to be passed through to ratepayers. The PSC is not required to disallow them simply because they are not in a contract, as long as the utility has obtained prior approval of the cost from the PSC.[3]

Finding no error, we affirm the decisions of the PSC in all three cases.

Affirmed.

---

[3] We note once again that many of the PSC's reasons for failing to approve the contract between Consumers and the MCV were found wanting by this Court.